KAUFMAN, SEMERARO, & LEIBMAN, LLP
2 Executive Drive, Suite 530
Fort Lee, New Jersey 07024
T: 201-947-8855
F: 201-947-2402
E: drosendahl@northjerseyattorneys.com
Attorneys for Plaintiff

| | |
|---|---|
| AHMED ABDELAZIM,<br><br>  Plaintiff,<br><br>v.<br><br>RITE AID OF NEW JERSEY, INC., JEFFREY ANDUJAR, and JOHN DOES 1-10,<br><br>  Defendants. | UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY<br>NEWARK VICINAGE<br><br>DOCKET:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Pursuant to Fed.R.Civ.P. 8, Plaintiff Ahmed Abdelazim alleges as follows.

## PARTIES

1. Plaintiff Ahmed Abdelazim is an American citizen of Egyptian descent. Until December 12, 2015, he was employed with Defendant Rite Aid of New Jersey, Inc. ("Defendant Rite Aid") as a Store Manager. He resides and is domiciled at 1033 Madison Avenue, Paterson, New Jersey 07501.

2. Defendant Rite Aid is a corporation authorized to conduct business in the State of New Jersey. Defendant Jeffrey Andujar was at all times mentioned herein employed by Defendant Rite Aid as a district manager and is of Latino descent.

3. Defendant Rite Aid owns and operates store number 2463 in Hackensack, New Jersey and store number 4812 in Jersey City, New Jersey.

4. John Doe(s) 1-10 are unknown employees of Defendant Rite Aid or other individuals who participated in the discriminatory actions and conspiracy set forth in this complaint.

## JURISDICTION AND VENUE

5. The United States District Court for the District of New Jersey, Newark Vicinage, has jurisdiction and venue over this complaint pursuant to: 28 U.S.C. § 1331, 1367(a), FRCP 4, N.J. Ct. R. 4:4-4, and 28 U.S.C. § 1391(b)(2).

6. The Court has federal subject matter jurisdiction because this complaint alleges violation of Title VII of the Federal Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, et seq.

7. The Court has supplemental jurisdiction over Plaintiff's state law claims because they arise from the same set of operative facts as Plaintiff's federal claims— Plaintiffs' employment with Defendant Rite Aid.

8. Venue is proper in the Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Hudson County, which is located within the Newark Vicinage of the United States District Court for the District of New Jersey.

## FACTUAL BACKGROUND

9. Plaintiff was hired by Rite Aid in 2009 as a loss prevention agent earning an hourly rate of $11.00.

10. In or about 2010, Plaintiff was promoted to assistant manager for the Jersey City store earning approximately $15.50 per hour.

11. At this time, Plaintiff's district manager was Wade LaRue.

12. Plaintiff excelled in his position as assistant manager; as a result, he was promoted in August 2012 to the position of store manager of the Hasbrouck Heights, New Jersey store earning a salary of approximately $50,000.00 per year.

13. Plaintiff excelled in the position of Store Manager; six (6) months later, he received a ten (10%) percent raise and was earning $55,000.00 per year.

14. Plaintiff continued to excel in his role as Store Manager and in January, 2014, Plaintiff was promoted again and was assigned to manage a larger store, store number 2463 in Hackensack, New Jersey.

15. In January 2014, along with the promotion, Plaintiff received a raise to earn an annual salary of approximately $62,000.00.

16. At the time Plaintiff became the Store Manager for the Hackensack, New Jersey store, the store was deemed "underperforming." Plaintiff was specifically assigned to the Hackensack, New Jersey store to improve the store's overall performance.

17. Under Plaintiff's management, the Hackensack store improved significantly. By way of example, prior to Plaintiff taking over the management of the store, customer service complaints in the prior calendar year were at 30. Under Plaintiff's management, customer service complaints dropped to 7. Weekly sales improved by approximately 10%-15% from the prior year. Additionally, the overall

store performance significantly increased and Plaintiff personally received the highest score in the entire district as rated by his colleagues. Furthermore, Plaintiff received the highest number for all of New Jersey from the Children Medical Network. Plaintiff beat his performance plan by 80% from the prior year and was the highest scoring individual for all of New Jersey.

18. As a result of all of the accomplishments cited above, Plaintiff received not one but two awards for his outstanding work during calendar year 2014.

19. In or about February 2014, Defendant Andujar became Plaintiff's district manager.

20. Almost immediately, Plaintiff noticed Defendant Andujar treated him differently than employees who were of Latin descent, i.e. similar to Andujar. Most significantly, from February 2014 until November 12, 2014, Defendant Andujar only met with Plaintiff on two face-to-face occasions, largely ignoring Plaintiff, and he rarely made visits to the Hackensack store.

21. Despite the fact that Plaintiff had excelled in his role as store manager for the Hackensack, New Jersey store, had been promoted numerous times since beginning his career at Rite Aid, and his store's performance in 2014 was more than satisfactory, in or about November 13, 2014 Defendant Andujar visited Plaintiff at the Hackensack store and stated to Plaintiff: "you have to leave – its better for me – I can't work with you."

4

22. Plaintiff was suddenly transferred out of the Hackensack, New Jersey store and worked as a "floater" between various stores working under district manager Wade LuRue.

23. On February 13, 2015, Plaintiff was assigned as Store Manager to store number 4812 in Jersey City, New Jersey under district manager Wade LuRue.

24. Wade LuRue praised Plaintiff's work during the period of time that Plaintiff reported to Mr. LuRue.

25. March 1, 2015 was the end of Rite Aid's fiscal year.

26. In March or April 2015, Defendant Adujar undertook Plaintiff's 2014 review in March or April of 2015.

27. Plaintiff objected to Defendant Andujar reviewing him, to no avail.

28. The review provided to Plaintiff by Defendant Andujar referenced the Hackensack, New Jersey store number (2463) but erroneously utilized store numbers from the Jersey City, New Jersey store (number 4812), which had significantly lower performance numbers than the Hackensack, New Jersey store. In March or April 2015, Defendant Andujar erroneously placed Plaintiff on a 90 day Performance Improvement Plan.

29. In 2014, the Jersey City, New Jersey store had significantly lower performance numbers than the Hackensack, New Jersey store.

30. Plaintiff was not responsible for the Jersey City, New Jersey store's numbers during the calendar year of 2014, nor from January through February 12, 2015— the period of time for which he was reviewed.

5

31. Defendant Andujar wrongfully placed Plaintiff on a Performance Improvement Plan, told Plaintiff he needed "development," and informed Plaintiff he would not receive a raise.

32. Plaintiff immediately contacted several individuals in the human resources department to object to his erroneous review.

33. Initially, a human resources district manager named "Juan" acknowledged that the numbers utilized in Plaintiff's review were erroneous and referred Plaintiff to his boss, Rosa Torres.

34. Rosa Torres agreed Plaintiff should be reviewed based upon the Hackensack, New Jersey store numbers but stated, even though the numbers were incorrect, his review may still stay the same. However, she agreed to refer the matter to her boss, Sean McCain. Mr. McCain agreed via email to meet with Plaintiff but never followed through and, despite Plaintiff's efforts, never met with Plaintiff or addressed his concern.

35. Plaintiff remained subject to an improper Performance Improvement Plan.

36. Plaintiff was assigned to work as the store manager for the Jersey City, New Jersey store in or about February 13, 2015.

37. Plaintiff excelled as the Store Manager for the Jersey City store and was responsible for increasing the Jersey City store numbers during the period of time under which he was the manager.

6

38. In or about September 2015, Defendant Andujar became Plaintiff's district manager once again.

39. Defendant Andujar immediately singled Plaintiff out and treated Plaintiff differently than other Store Managers.

40. For example, Defendant Andujar required Plaintiff to work hours and a schedule that contradicted company policy and issued Plaintiff unreasonable deadlines to complete tasks.

41. On September 26, 2015, Plaintiff became ill and was seen in the hospital. Plaintiff immediately notified Defendant Andujar of his illness and absence; upon returning to work, he presented Defendant Andujar with a doctor's note.

42. In or about October 14 2015, Plaintiff was again sick and returned to work with a doctor's note. Again, Plaintiff properly reported his absence and presented sufficient medical documentation to substantiate his absence.

43. Thereafter, on October 22, 2015, Defendant Andujar informed Plaintiff that Defendant Andujar had placed Plaintiff on Rite Aid's "Time and Attendance" policy ("Policy") and that Plaintiff was in violation of the Policy.

44. However, the Policy itself states that only hourly/non-salaried employees are subject to it, which would exclude Plaintiff, who was a salaried employee.

45. Plaintiff immediately objected and reminded Defendant Andujar that the Policy only applied to hourly employees and reminded Defendant Andujar that Plaintiff was a salaried employee.

46. Defendant Andujar responded "I don't care. I'm doing it anyway."

47. Defendant Andujar improperly issued Plaintiff a written disciplinary action for calling out sick and not following the Policy.

48. Plaintiff was placed on an approved medical leave of absence from November 1, 2015 through November 25, 2015.

49. On November 23, 2015, Defendant Andujar telephoned Plaintiff and urged Plaintiff to return to work and not extend his leave of absence.

50. Plaintiff returned to work on November 26, 2015, but due to the Thanksgiving holiday he did not physically report to work until Saturday, November 28, 2015.

51. Upon returning to work, Plaintiff had no access to the computer systems, emails, or payroll.

52. Defendant Rite Aid's corporate offices are closed on the weekends and therefore Plaintiff could not alert corporate that he had no access until Monday, November 30, 2015.

53. On November 30, 2015, Plaintiff notified corporate headquarters that he had no access to the computer systems, emails, and payroll and was told it would take at least 48 hours before access would be provided to Plaintiff.

54. Plaintiff was not scheduled to work on Tuesday, December 1, 2015 and returned to work Wednesday, December 2, 2015, at which time Plaintiff had access to the computer systems for the first time since his leave of absence began.

55. On Thursday, December 3, 2015 Plaintiff was notified by Defendant Andujar that he was being suspended effective immediately and would be investigated for failing to remove two previously terminated employees, Edilio Perez and Saeid Bayoum, from the computer system during his leave of absence.

56. Plaintiff immediately objected and reminded Defendant Andujar that he had been on a leave of absence with no access to any computer systems.

57. Defendant Andujar responded that it was Plaintiff's responsibility to remove these individuals from the system, even while he was on a leave of absence.

58. Plaintiff reported to numerous members of management (Chris Lynch, and Ms. Torres) that because Plaintiff was on a leave of absence and upon returning to work did not have access to the computer systems for several days, it was impossible for Plaintiff to remove the terminated individuals from the system.

59. In fact, Defendant Rite Aid was provided written documentation verifying the fact that Plaintiff had no access to the computer systems and, in fact, the Jersey City, New Jersey store's assistant manager removed the terminated employees from the computer system.

60. Nevertheless, on December 7, 2015 Defendant Rite Aid terminated Plaintiff for failing to remove two terminated employees from the computer systems.

61. Plaintiff has been replaced by a store manager of Latino descent.

62. Defendant Andujar has repeatedly favored Latino employees, particularly those of Puerto Rican descent, over non-Latino employees. By way of example only, Defendant Andujar hired a former Rite Aid employee who had previously walked off the job in the middle of a work-shift providing no advance notice of his resignation; the employee was of Puerto Rican descent.

63. In 2015, Defendant Andujar promoted two Latino and/or Puerto Rican employees, one of which had previously been demoted.

## COUNT ONE: NATIONAL ORIGIN DISCRIMINATION
### (Title VII, LAD)

64. Plaintiff repeat and re-allege paragraphs 1-63 of this complaint as if fully set forth herein.

65. Title VII and the New Jersey Law Against Discrimination ("**LAD**'), N.J.S.A. 10:5-1, et seq., prohibited Defendant Rite Aid from taking adverse action against Plaintiff based on his national origin or from treating employees differently based predominantly on national origin. Plaintiff was issued a right to sue letter under Title VII on October 27, 2016.

66. Defendant Andujar's national original discrimination is imputed to Defendant Rite Aid because he was a supervisor. In addition, Defendant Rite Aid was on notice of Defendant Andujar's disparate treatment of Plaintiff and non-Latino employees such that it had an obligation to investigate before taking any adverse action against Plaintiff. In all likelihood, Defendant Rite Aid's computer system shows the national origin of employees in each store and Defendant Rite Aid

had easy access to proof of Defendant Andujar's disparate treatment of non-Latino employees.

## COUNT TWO: HOSTILE WORK ENVIRONMENT
### (Title VII, LAD)

67. Plaintiff repeats and re-alleges paragraphs 1-66 of this complaint as if fully set forth herein.

68. Title VII and LAD prohibit an employer from permitting or failing to stop one employee from intentionally, pervasively, and regularly harassing another employee because of that employee's membership in a protected classification, otherwise known as creation of a hostile work environment. Here, Plaintiff belongs to the protected classifications of national origin.

69. In addition to the detrimental actions already set forth in this complaint, Defendant Andujar and Defendant Rite Aid's discriminatory conduct detrimentally affected Plaintiff through the increased stress on Plaintiff of simply trying to do his job as Defendant Andujar and John Doe(s) 1-10 attempted to sabotage his career and through the daily mental anguish of knowing that Defendant Andujar was searching for a reason to fire him.

70. Defendants' discriminatory conduct toward Plaintiff would detrimentally affect a reasonable person.

71. Defendants Rite Aid and John Doe(s) 1-10 failed to take adequate remedial action after Plaintiff's complaints to numerous members of upper management and human resources of the hostile work environment. Rather than investigate any of Plaintiff's complaints or question why an employee with

extensive longevity and history of continued success and upward mobility within the company would suddenly be placed on a Performance Improvement Plan, then suspended and then terminated, the Defendant Rite Aid just went through the motions of pretending to acknowledge Plaintiff's complaint without ever conducting an investigation.

### COUNT THREE: RETALIATION FOR TAKING MEDICAL LEAVE
**(Federal Family Medical Leave Act)**

72. Plaintiff repeats and re-alleges paragraphs 1-71 of this complaint as if fully set forth herein.

73. The Federal Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a), prohibits a covered employer, like Defendant Rite Aid, from retaliating against a covered employee, like Plaintiff, for exercising or attempting to exercise his FMLA rights.

74. Plaintiff's November 2015 medical absences were covered by the FMLA.

75. Defendant Andujar forced Plaintiff to return to work before he was medically ready and when Plaintiff was still eligible for FMLA leave.

76. Defendant Andujar then recommended the termination of Plaintiff based on false pretenses, when the termination was in fact causally related to Plaintiff's FMLA leave. This causation is established by, among other things, Defendant Andujar's wrongful placement of Plaintiff on the Policy and the fact that Defendants terminated Plaintiff for not performing work while he was on FMLA leave.

## COUNT FOUR: AIDING AND ABETTING A VIOLATION OF LAD
### (LAD)

77. Plaintiff repeats and re-alleges paragraphs 1 through 76 of this complaint as if fully set forth herein.

78. A supervisor is personally liable under LAD for knowingly participating in a violation of LAD and providing substantial assistance to the violation.

79. Defendant Andujar knowingly participated in the violation of Plaintiff's rights under LAD and substantially assisted in the violation of those rights by, among other reasons: (a) treating Plaintiff differently than non-Latino employees; (b) consistently hiring and promoting Latino employees over other equally or more-qualified employees; (c) applying the Policy to Plaintiff even though it did not apply; and (d) subjecting Plaintiff to unreasonable and baseless performance reviews in an effort to thwart Plaintiff's career.

## DEMAND FOR RELIEF

Pursuant to counts one through four of the complaint, Plaintiff demands relief as follows:

(a) Compensatory damages, including for emotional distress;

(b) Punitive damages;

(c) Reinstatement;

(d) Attorneys' fees and costs;

(e) Such other relief as the court deems equitable and just.

## JURY DEMAND PURSUANT TO FED.R.CIV.P. 38(b)

Plaintiffs demand trial by jury on all issues so triable.

Dated: January 6, 2017

/s/ *Deena B. Rosendahl*
DEENA B. ROSENDAHL, ESQ.
KAUFMAN, SEMERARO & LEIBMAN, LLP